IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Janet I. Morris

       Plaintiff,

v.

Anchor Hocking, LLC

       Defendant.

Case No. 2:10-cv-1163

Judge Graham

Magistrate Judge Abel

OPINION AND ORDER

This matter is before the court on a motion for summary judgment pursuant to Fed. R. Civ. 56(c) filed by defendant Anchor Hocking, LLC (Anchor Hocking).  Plaintiff is Janet Morris (Morris), a former employee of Anchor Hocking.

I.     Factual Background

Morris's Employment History

Plaintiff Janet Morris began working for Anchor Hocking on July 2nd, 1969.  Except for a brief break between 1972 and 1973, she worked for Anchor Hocking continuously until July 30, 2009. (Complaint, Doc. 2 ¶ 1; Morris Dep., Doc. 21 at 6.)  She began as a label clerk and was repeatedly promoted.  Her ultimate position with the company was Sample Packs Supervisor, a management position in Anchor Hocking's distribution center. (Complaint, Doc. 2 ¶ 1.)  She held this position for the last fifteen years of her employment with the defendant.  Id.  Morris was 58 years old when Anchor Hocking discharged her.  Id.  She alleges that she was replaced by a younger employee or group of younger employees.[1]  Id. at 3.  Morris asserts that she was discharged out of

---

[1] Morris's complaint asserts that she was replaced by three younger workers. (Complaint, Doc. 2 ¶ 3.)  Her memorandum in opposition to summary judgment asserts that while some of her duties went to three younger employees in Anchor Hocking's customer service department, ultimately she was replaced by a single younger

1

discrimination for her age.  Anchor Hocking claims that she was discharged for the theft of a large amount of glassware that she attempted to sell at her daughter's garage sale.

Morris was discharged on July 30, 2009.  Id.  She was called into a meeting with her direct supervisor, Ryan Whitfield, who was the manager of the distribution center, and Human Resources Representative Lisa Carr.  Id.  In this meeting, Carr told Morris that she was being discharged for stealing Anchor Hocking products and selling them at her daughter's garage sale.  Id.  Carr gave Morris two choices, she could either resign immediately and return the stolen goods, or Anchor would terminate her and initiate prosecution against her and her daughter the following morning. Id.  Morris requested to speak with an attorney before choosing between the two options, but Carr indicated that she needed to choose immediately.  Id.  She chose to resign and return glassware that was in her possession.  Id.

Removal of Glassware From Anchor Hocking and Investigation of Morris

The parties focus extensively on whether Morris improperly removed products from Anchor Hocking premises and whether Anchor Hocking's investigation could reasonably have concluded that Morris stole from her employer.  Because the motion is granted on other grounds, the court need not resolve these factual disputes.

The parties agree on the basics of what happened.  Morris removed "ware"[2] from Anchor Hocking premises which was subsequently offered for sale at Morris's daughter's garage sale. (Motion for Summary Judgment, Doc. 24 at 7-9; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Doc. 19 at 3-5.)  Employees from Anchor Hocking's

---

employee, 48-year-old Carolyn Jones.  (Response to Motion for Summary Judgment, Doc. 29 at 10.)

[2]The parties use the term "ware" to describe products created and sold by Anchor Hocking, including, but not necessarily limited to, glassware.

2

human resources department learned of the sale and conducted an investigation into Morris's alleged theft of ware. (Doc. 24 at 9-11; Doc. 19 at 5-6.) This investigation ultimately led to Morris's termination. (Doc. 24 at 10-11; Doc. 19 at 6-7.) There are disputed factual issues regarding whether Anchor Hocking had a policy for removal of ware and what that policy was, whether Morris complied with that policy by receiving permission to remove the ware which appeared at her daughter's garage sale, and whether Anchor Hocking's investigation was sufficient to conclude that Morris was guilty of theft and should be discharged.

Morris's Termination

On July 30, 2009, Carr requested that Morris meet her and Whitfield at the Anchor Hocking plant. At the meeting, Carr "provided Janet with two options. No. 1 was for her to voluntarily resign and return the stolen property. No. 2 was that we would involve the authorities and prosecute her for theft if she didn't voluntarily resign." (Carr Dep., Doc. 19 at 13.) According to Morris, after she was presented with these two choices she requested to speak with an attorney, but Carr told her that she had to either sign a letter of resignation immediately or face prosecution the next day. (Complaint, Doc. 2 ¶ 13.) Carr has no memory of Morris requesting to speak to an attorney before making her decision: "She could have. I don't recall. I didn't take notes from that meeting. . . . I don't recall that happening. I'm not going to say it didn't." (Carr Dep., Doc. 19 at 14.) Ultimately, Morris signed a resignation letter at that meeting. Id.

Following her discharge, Whitfield arranged to meet Morris in a Wal-Mart parking lot to receive the remaining glassware that had not been sold at the garage sale. Id. at 15.

Replacement

Two weeks after Morris's discharge, Carr posted a vacancy for the Sample Packs Supervisor

3

position. Id. at 3. The position was never filled. Id. Instead, Morris's assistant, Harriet Clagg, age 67, initially took over all of Morris's responsibilities: "I just took over. Just stepped over. Did her and my work." (Clagg Dep., Doc. 20 at 3.) However, it soon became clear that Clagg alone could not perform both her own duties and all of the work that Morris had done. Id. at 5. In mid-September, one large responsibility that had belonged to Morris, "keying in orders," was passed to a small number of employees in the customer service department. Id. at 4-5. In her complaint, Morris specifically identifies three younger employees who she claims took over her job responsibilities: "Kelly Caine, age 25; Jen MacMacher, age 31; and Sarah G, age 24." (Complaint, Doc. 2 ¶ 14.) Clagg names two customer service employees who took on Morris's keying responsibilities, Kelly and Laurie. (Clagg Dep., Doc. 20 at 5.) There is no dispute that the job of keying in orders was added to the existing responsibilities of employees from the customer service department. (Morris Dep., Doc. 21 at 38; Whitfield Dep., Doc 23 at 9; Carr Dep., Doc. 19 at 3.) Clagg also did some work keying in orders, a job that she estimated had constituted 90 percent of Morris's workload. (Clagg Dep., Doc. 20 at 5.)

Slightly more than a year after Morris's termination, Clagg retired. Id. at 2. The responsibilities that Clagg had inherited from Morris were shifted to a department that was formed by combining the sample pack department with the "dot com venture." (Carr Dep., Doc. 19 at 3.) This internet sales business did not exist while Morris worked at Anchor Hocking. Id. Anchor Hocking created a new position within the department that consisted of new duties as well as some of the duties that Clagg had inherited from Morris. Id. at 4. Candace Priddy, the head of the department, hired Carolyn Jones to fill this position. Id. Jones is 48 years old. Id. Jones did not take over any of Morris's former responsibilities until September or October of 2010, after Clagg retired

and more than a year after Morris was terminated at the end of July, 2009. (Whitfield Dep., Doc. 23 at 9-10.)

This Action

In January 2010, Morris filed a charge of age and gender discrimination with the Equal Employment Opportunity Commission. (Complaint, Doc. 2 ¶ 16.) The Commission issued a Right to Sue letter on September 24, 2010. Id. Plaintiff filed her complaint in this court alleging that Anchor Hocking discriminated against her because of her age in violation of 29 U.S.C. § 623, that she was retaliated against for requesting to speak with an attorney, and that Anchor Hocking promised her continued employment and that she relied on that promise to her detriment. (Doc. 2.) The parties took a number of affidavits and depositions, and defendant now moves for summary judgment. (Doc. 24.) In response, Morris has abandoned her promissory estoppel claim, but asserts that defendant's motion should be denied with respect to the age discrimination and retaliation claims. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Doc. 19 at 15.)

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

**III.    Age Discrimination**

Plaintiff brings her discrimination claim pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").[3]  The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623.  This Court considers a discrimination claim under the ADEA using the burden-shifting framework initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Godfreson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999) (using the McDonnell Douglas framework to consider an ADEA claim).  Initially, a plaintiff must establish a *prima facie* case by demonstrating "by a preponderance of the evidence the following four elements: (1) he or she was forty years old or older at the time of their dismissal; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by a younger person." DiCarlo v. Potter, 358 F.3d 408, 417 (6th Cir. 2004) (citing McDonald v. Union Camp Corp., 898 F.2d 1155, 1159-60 (6th Cir. 1990)).  Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce evidence of a non-discriminatory purpose for the adverse employment action. Barnes v. GenCorp, Inc., 896 F.2d 1457, 1464 (1990).  The burden then shifts back to the plaintiff to demonstrate her case by a preponderance of the evidence.  Id.  Though the burden of production shifts, the burden of persuasion remains at all times with the plaintiff.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).

---

[3] The complaint gives no indication that the plaintiff seeks to avail herself of any Ohio law preventing age discrimination in employment.  However, in a footnote to her response to defendant's summary judgment motion, plaintiff writes, "In Ohio, 'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.' . . . Thus, both the state and federal claims can be addressed simultaneously." (Response to Motion for Summary Judgment, Doc. 29 at 8).

7

At this stage the Court considers whether Morris has established a *prima facie* case. Because the evidence, taken in a light most favorable to the plaintiff, establishes that Anchor Hocking did not replace Morris, plaintiff has not established a *prima facie* case and defendant's motion for summary judgment is granted.

The evidence demonstrates no real disagreement regarding the distribution of Morris's responsibilities once she was terminated. Morris obviously can not claim that when Clagg initially took over her responsibilities, she was replaced by a younger employee because Clagg is older than Morris. Nor can she argue that she was "replaced" by employees from the customer service department who took over much of the work that she did "keying in orders." Such an argument is clearly precluded by Lilley v. BTM Corp. in which a panel of the Sixth Circuit Court of Appeals considered an ADEA claim brought by an employee whose sales position had been eliminated, and whose duties had been redistributed among the remaining sales staff. 958 F.2d 746, 753 (6th Cir. 1992). The court held that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." Id.; see also Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003) (quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)) ("A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.").

Instead, Morris asserts that she was replaced by Jones. Jones, who at 48 was significantly younger than Morris, was promoted to a newly created internet sales position when she took over some of the duties that Morris had held. This new position was created and filled more than a year after Morris was discharged. Yet Morris argues that if not for the defendant's discriminatory action, *she* would have occupied the newly-created position, and thus she was replaced by Jones. "The new

8

internet business logically would have been Morris' to run as it was located in the Sample Pack department and essentially encompassed and took over that department." (Response to Motion for Summary Judgment, Doc. 29 at 10.) Accepting the tenuous proposition that Morris would hold the new position had she not been terminated, the argument that Morris was replaced by Jones fails because the new position did not exist and Jones did not hold it until more than a year after Morris's discharge.  The Sixth Circuit Court of Appeals has held that a mere three-month delay between an allegedly discriminatory discharge and the hiring of a younger employee "substantially weaken[s]" a plaintiff's *prima facie* case.  Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir. 1987). The Circuit Court has held that a nine-month delay between a plaintiff's discharge and the hiring of a younger employee "does not mean that [the company] replaced [the plaintiff] in any sense relevant to inferring age-based discrimination."  Lilley, 958 F.2d at 752.  Here, more than a year had passed before Jones was selected for the position that took on some of Morris's duties.  After a year in which Morris's work was spread to existing employees, including an older employee, Anchor Hocking's decision to hire Jones to take on some of Morris's responsibilities is not replacement of Morris.  For this reason, Morris has not established a *prima facie* case for age discrimination.

**IV. Termination in Violation of Public Policy**

     Morris alleges that when Carr gave her the choice between resigning immediately or being terminated and facing prosecution for theft, she asked to speak with her attorney before choosing between the two options, but that Carr demanded an answer immediately.  Though her complaint appears to frame this as matter of retaliation, she now styles it as a claim for termination in violation of public policy.  This court has recognized that "it is against the clear public policy of the state of Ohio for an employer to terminate an employee for retaining legal counsel."  Kulick v. Ethicon

Endo-Surgery, 803 F.Supp.2d 781, 788-89 (S.D. Ohio, 2011) (citing Simonelli v. Anderson Concrete Co., 650 N.E.2d 488, 492 (Ohio App.3d 1994)). Here, the facts taken in a light most favorable to the plaintiff demonstrate that she was not terminated for retaining legal counsel. Anchor Hocking decided that her employment would end before she asked to speak with an attorney. She was given only two choices, resign immediately or be terminated. She chose to resign immediately. As a matter of logic, Anchor Hocking's decision was not in retaliation for or caused by a request that she had not yet made. For this reason, her public policy claim fails.

**IV.    Conclusion**.

Based on the foregoing reasons, the defendant's motion for summary judgment (Doc. 24) is GRANTED. The clerk shall enter final judgment in favor of the defendant dismissing plaintiff's complaint with prejudice.

IT IS SO ORDERED.

S/ James L  Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: June 19, 2012